NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

8th Circuit Court-Jaffrey Family Division
Case No. 2024-0680
Citation:  In re Guardianship of K.C., 2025 N.H. 22


IN RE GUARDIANSHIP OF K.C.

Argued: April 15, 2025
Opinion Issued: May 29, 2025


Rath, Young and Pignatelli, P.C., of Concord (Cassandra A. Moran on the brief and orally), for the petitioner.


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Mary A. Triick, senior assistant attorney general, on the memorandum of law and orally), for the New Hampshire Division for Children, Youth and Families.


PER CURIAM.

[¶1] The petitioner, J.B., appeals an order issued by the Circuit Court (Burke, R., approved by Tessier, J.) dismissing her petition for guardianship of K.C., a minor child.  See RSA ch. 463 (2018 & Supp. 2024).  She argues that the trial court erred in determining that the appointment of the New Hampshire Division for Children, Youth and Families (DCYF) as K.C.'s guardian under RSA chapter 170-C precludes her guardianship petition under RSA chapter 463. We affirm.

## I. Facts

[¶2] The following facts are drawn from the record. In 2020, the trial court terminated the parental rights of K.C.'s parents pursuant to RSA chapter 170-C as a result of their failure to achieve compliance with dispositional orders in an abuse and neglect case under RSA chapter 169-C. The trial court appointed DCYF as K.C.'s legal guardian and vested legal custody of K.C. in DCYF pursuant to RSA 170-C:11, II (2022). In the RSA chapter 169-C case, the trial court ordered that K.C.'s permanency plan be adoption.[1] DCYF placed K.C. with the petitioner on two occasions — from September 2018 to February 2019, and from June 2021 to January 2022. However, DCYF ultimately removed K.C. from the petitioner's home and placed him in a residential care facility.

[¶3] In March 2023, the petitioner filed a petition for guardianship of K.C. under RSA chapter 463. The trial court construed the petition as seeking to remove DCYF as K.C.'s guardian and to appoint the petitioner as his guardian instead. At a hearing in August 2024, DCYF moved to dismiss, arguing that it could not be removed as K.C.'s guardian because RSA chapter 170-C, under which it was appointed, does not authorize the removal of a guardian. The trial court granted DCYF's motion, concluding that any provision for the removal of a guardian in RSA chapter 463 is not applicable to a guardianship under RSA chapter 170-C. The parties agreed, however, to allow the petitioner's guardianship petition to proceed.

[¶4] DCYF again moved to dismiss the petitioner's guardianship petition in October 2024. Following a hearing, the trial court granted the motion. The court observed that "[i]t seems unreasonable to conduct a guardianship proceeding when a guardianship is already in place and there are no allegations that, pursuant to it, [K.C.'s] best interests are not being served." The court further identified the potential challenges posed by "the prospect of a co-guardianship" with DCYF and the petitioner and noted the difficulty of managing that relationship through the application of separate statutory schemes. This appeal followed.

## II. Analysis

[¶5] The issue on appeal is whether DCYF's guardianship under RSA chapter 170-C precludes the petitioner from petitioning for guardianship under RSA chapter 463. Resolving this issue requires that we engage in statutory interpretation. Statutory interpretation presents a question of law, which we review de novo. In re Guardianship of B.C., 174 N.H. 628, 631 (2021). In matters of statutory interpretation, we first examine the language of the

---

[1] In May 2022, the trial court denied the petitioner's motion to intervene in the RSA chapter 169-C case and dismissed her adoption petition.

2

statute, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.  Id.  Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to interpret the statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.  Id.

[¶6] The petitioner asserts that neither RSA chapter 170-C nor RSA chapter 463 precludes her guardianship petition.  She contends that the trial court therefore erred by failing to consider the merits of whether her appointment as K.C.'s guardian is in K.C.'s best interests.  DCYF responds by arguing that a new petition for guardianship of a child under RSA chapter 463 cannot be initiated when the child is already under an RSA chapter 170-C guardianship and a permanency plan of adoption has already been established.  We agree with DCYF.

[¶7] Although they both provide for the guardianship of minors, RSA chapter 170-C and RSA chapter 463 are fundamentally different statutory schemes.  The legislature's placement of RSA chapter 463, "Guardianship of Minors and Estates of Minors," in Title XLIV, entitled "Guardians and Conservators," rather than alongside RSA chapter 170-C, "Termination of Parental Rights," in Title XII, entitled "Public Safety and Welfare," demonstrates its intent for the two guardianship provisions to exist separately.  Moreover, the stated purposes of the two chapters differ.  The purpose of RSA chapter 170-C is "to provide for the involuntary termination of the parent-child relationship by a judicial process which will safeguard the rights and interests of all parties concerned and when it is in the best interest of the child."  RSA 170-C:1 (2022).  The stated purpose of RSA chapter 463, on the other hand, is "to secure for a minor an environment of stability and security by providing for the appointment of a guardian of the person when such appointment is in the best interests of the minor" and "to provide for the appointment of a guardian of the estate for the proper management of the property and financial affairs of the minor."  RSA 463:1 (2018).  Although both chapters focus on the best interests of the child, RSA chapter 170-C sets forth the procedures that apply to petitions to terminate the parent-child relationship, whereas RSA chapter 463 provides a broader framework for the appointment of a guardian of the person or of the estate or both.  See, e.g., RSA 170-C:10 (2022); RSA 463:8 (2018).

[¶8] Under RSA chapter 170-C, "[i]f the court finds grounds for the termination of the parent-child relationship, it shall terminate such relationship and appoint the department of health and human services or another authorized agency as guardian of the child's person and vest legal custody in such agency."  RSA 170-C:11, II.  Thus, when the parental rights of

K.C.'s parents were terminated, RSA 170-C:11, II required the court to appoint "the department of health and human services or another authorized agency" as K.C.'s guardian, and the court had no discretion to appoint any other individual or entity as guardian. Id. Nothing in RSA chapter 170-C contemplates the removal of the child's guardian or the appointment of another individual as co-guardian. See generally RSA ch. 170-C. Appointing an additional party — here, the petitioner — as guardian when RSA 170-C:11, II clearly mandates that only "the department of health and human services or another authorized agency" be appointed as the child's guardian would be contrary to the plain language of the statute, which does not contemplate the appointment of another individual as the child's guardian.

[¶9] In its role as the guardian of the child, DCYF has "the duty and authority to make important decisions in matters having a permanent effect on the life and development of the minor, and to be concerned about the general welfare of the minor." RSA 170-C:2, V (2022); see also RSA 169-C:3, XIV (2022). As the trial court noted, following the termination of the parental rights of K.C.'s parents and appointment of DCYF as K.C.'s guardian under RSA chapter 170-C, "the matter returns to court for a post-permanency hearing under the original RSA Chapter 169-C case." "At a post-permanency hearing the court shall determine whether the department has made reasonable efforts to finalize the permanency plan that is in effect." RSA 169-C:24-c, II (2022). In this case, DCYF is tasked with making reasonable efforts to finalize K.C.'s permanency plan, which is adoption. DCYF serves as K.C.'s guardian until the permanency plan is finalized and the abuse and neglect proceeding is terminated. Cf. Petition of New Hampshire Div. for Children, Youth and Families, 170 N.H. 633, 642 (2018).

[¶10] The petitioner, who is not a party to K.C.'s RSA chapter 169-C case, petitioned for guardianship under RSA chapter 463. See RSA 463:5 (2018). Under RSA chapter 463, "[g]uardian" is defined as "the individual or entity appointed by the court as provided in this chapter and includes joint and successor guardians." RSA 463:2, IV (2018). To prevail on her petition for guardianship under RSA chapter 463 in this case, the petitioner must "establish by a preponderance of the evidence that a guardianship of the person is in the best interests of the minor." RSA 463:8, III(a) (2018). DCYF maintains that the petitioner would "as a matter of law . . . be unable to meet [this] burden of proof" because appointing the petitioner as K.C.'s guardian could impede its efforts to obtaining permanency, contrary to K.C.'s best interest. We agree. Adoption, not long-term guardianship, is K.C.'s permanency plan. See RSA 169-C:24-b, II(a)(1)-(2) (2022) (options for permanency include, inter alia, "[a]doption through termination of parental rights" and "[g]uardianship with a fit and willing relative or another appropriate party"). Requiring the trial court to consider the merits of competing petitions for guardianship under separate statutory schemes at this juncture would risk delaying the finalization of the child's permanency plan. This result would

4

undermine the legislature's objective of hastening the resolution of abuse and neglect proceedings to achieve permanent placement that is in the child's best interest.  See In re N.T., 175 N.H. 300, 309-10 (2022).

[¶11] Moreover, many of the rights of a guardian under RSA chapter 463 have already been assigned to DCYF under RSA chapter 170-C.  The duties and authority of a guardian under RSA chapter 170-C are similar but not identical to the "powers and duties of guardians of the person of the minor" under RSA chapter 463.  Compare RSA 170-C:2 (2022), with RSA 463:12 (Supp. 2024).  Appointing DCYF and the petitioner as K.C.'s guardians under separate statutory schemes would, as the trial court aptly observed, be "unmanageable and fraught with the possibility of conflict."  Nonetheless, the parties compare this case to In re Guardianship of B.C., wherein we concluded that a guardianship may, in some instances, exist concurrently with an award of legal custody to another individual or entity.  In re Guardianship of B.C., 174 N.H. at 632.  That conclusion, however, is inapposite here because DCYF has both guardianship and legal custody of K.C.

## III.  Conclusion

[¶12] For the foregoing reasons, we conclude that the appointment of DCYF as K.C.'s guardian under RSA chapter 170-C precludes the petitioner from petitioning for guardianship under RSA chapter 463.  Of course, if the legislature disagrees with our statutory interpretation, it is free to amend the statute, as it sees fit, within constitutional limitations.  See In re D.O., 173 N.H. 48, 58 (2020).  We have considered the petitioner's remaining arguments and conclude that they do not warrant further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).  Accordingly, we affirm the trial court's order dismissing the petitioner's guardianship petition.

Affirmed.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred.